IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Angela Marie Collins,**

                    Plaintiff;

        v.                                          Civil Action No. 12-1256-RGA

**Carolyn W. Colvin,** Acting Commissioner of
Social Security,

                    Defendant.

MEMORANDUM OPINION

Angela Pinto Ross, Esq., Wilmington, DE, Attorney for Plaintiff.

Charles M. Oberly, III, United States Attorney, Wilmington, DE; Heather Benderson, Special
Assistant United States Attorney, Philadelphia, PA, Attorneys for Defendant.

February 25, 2014

ANDREWS, U.S. District Judge:

Plaintiff, Angela Marie Collins, appeals the decision of Defendant Carolyn W. Colvin, the

Commissioner of Social Security (the "Commissioner"), denying her claim for Social Security

Disability Insurance ("SSDI") benefits. This Court has jurisdiction pursuant to 42 U.S.C. §

405(g), which grants original jurisdiction to the District Courts to review a final administrative

decision by the Commissioner.

Presently pending before the Court are cross-motions for summary judgment filed by

Collins and the Commissioner. (D.I. 9, 13). For the reasons set forth below, the Court grants

Plaintiff's motion for summary judgment, denies the Commissioner's motion, and remands for

further proceedings.

## I.      BACKGROUND

### A.  Procedural History

Collins filed her application for SSDI on February 11, 2009, alleging disability

commencing on January 31, 2007, due to bipolar disorder, anxiety and depression, broken

shoulder, back pain, high blood pressure, pain or numbness on standing, sitting, and movement

and inability to concentrate. (D.I. 7 ("Transcript" and hereafter "Tr.") at 132-33, 168, 181). Her

application was initially denied and a hearing was held before an Administrative Law Judge

("ALJ") on August 27, 2010. (Tr. 26, 28, 88-92, 95-99, 101). The ALJ determined that Ms.

Collins is not disabled in a decision dated October 20, 2010. (Tr. 13-24). Ms. Collins requested a

review of the decision of the ALJ on November 12, 2010. (Tr. 7, 219-221). The Appeals Council

denied the Request for Review on August 3, 2012, after which the decision of the ALJ became

the Commissioner's final decision. (Tr. 1-3). Collins filed this suit on October 2, 2012. (D.I. 1).

### B.  Plaintiff's Medical History, Condition, and Treatment

At the time of the ALJ's decision, Collins was 41 years old and defined as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963. (Tr. 24, 33, 132, 168). Collins has a high school education and was licensed as a beautician after attending cosmetology school. (Tr. 35, 187). Ms. Collins worked as a beauty shop owner and hairdresser from 1992 to 2007. (Tr. 78, 151-53, 181, 209, 216).

Collins' detailed medical history is contained in the record, but a brief summary is in order. Ms. Collins suffers from degenerative rotator cuff tendonosis with a tear of the bursal surface in her right shoulder as well as limited range of motion. (Tr. 401-02, 405-06, 448, 553, 561, 570, 581, 612). Collins is not a candidate for surgical repair of the rotator cuff tear because of her history of radical mastectomy. (Tr. 342).

Ms. Collins has a history of two suicide attempts. (Tr. 229, 258, 416-18, 481, 485). She was hospitalized after a "multidrug" overdose and "true attempt to take her life" in April 2006, and after a Benadryl overdose and suicidal gesture in January 2007. (Tr. 229, 416-18). Collins has been treated for major depressive disorder, bipolar disorder, and obsessive compulsive disorder by her psychiatrist, Jeanette M.S. Zaimes, M.D. since 2005. (Tr. 470-90, 535-39). Progress notes from June 26, 2008 to August 24, 2010 indicate ongoing symptoms of mental health impairment including anhedonia, decreased concentration, unfocused speech, anxiety, and tearfulness. (Tr. 473-77, 535-37). Dr. Zaimes indicates that Ms. Collins has marked restriction of activities of daily living and concludes that "Bipolar II depression combined with obsessive compulsive disorder and her medical condition render the patient completely incapable of functioning independently or on an adult level." (Tr. 532).

**C. ALJ Decision**

The ALJ found that Plaintiff had the severe impairments of history of breast cancer, history of right shoulder fracture, degenerative joint disease of the right shoulder with rotator cuff tear, dental abscess with osteomyelitis, bipolar disorder, and depression. (Tr. 15, Finding No. 3). The ALJ further found that while Plaintiff's impairments did not meet a Listing (Tr. 15, Finding No. 4), they limited her to a reduced range of light work. (Tr. 18, Finding No. 5). Therefore, Plaintiff could not perform her past relevant work (Tr. 22, Finding No. 6), but could perform "light work" with limitations, such as collator operator, order caller, inspector, copy examiner, surveillance system monitor, and microfilm document preparer. (Tr. 23). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 34).

## II.    LEGAL STANDARD

### A.  Standard of Review

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (2d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.22d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95

3

(3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citations omitted).

The Third Circuit has explained that a:

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## B. Disability Determination Process

Title II of the Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). To qualify for SSDI, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind

4

of substantial gainful work which exists in the national economy . . . ." 42 U.S.C § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. If the claimant is not suffering from a severe impairment or a severe combination of impairments, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, if the claimant's impairments are severe, the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. If a claimant's impairment or its medical equivalent matches an impairment in the listing, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments or impairment combination are not listed or medically equivalent to any listing, then the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv);

*Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by her or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is able to return to her past relevant work, the claimant is not disabled. *See id.*

If the claimant is unable to return to past relevant work, step five requires the Commissioner to determine whether the impairments preclude the claimant from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating "not disabled" finding if claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## III.    DISCUSSION

Collins makes four primary arguments on appeal. First, Collins argues that the ALJ erred by failing to give "any controlling weight" (Tr. 21) to the opinions of Dr. Zaimes, Ms. Collins' treating psychiatrist. Second, Collins argues that the ALJ erred in the factual determination of assessing Collins' right shoulder pain. Third, Collins argues that the ALJ erred by failing to consider the impact of the combination of impairments. Fourth, Collins argues that the ALJ erred

by failing to include physical and mental limitations in the RFC. Because the third and fourth

argument go towards the reasonableness of the RFC assessment, they will be dealt with together.

### A.  The ALJ Erred in Failing to Follow the Treating Physician Rules.

In determining whether Collins met or medically equaled a listing, the ALJ considered

whether the "paragraph B" or "paragraph C" criteria were met, only one of which is required.

(Tr. 16-17). In order to meet "paragraph B," the claimant must have bipolar syndrome resulting

in at least two of:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpart P, Appendix 1, § 12.04. In order to meet "paragraph C," the claimant

must show a:

> Medically documented history of a chronic affective disorder of at least 2 years' duration
> that has caused more than a minimal limitation of ability to do basic work activities, with
> symptoms or signs currently attenuated by medication or psychosocial support, and one
> of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a
> minimal increase in mental demands or change in the environment would be predicted to
> cause the individual to decompensate; or
>
> 3. Current history of one or more years' inability to function outside a highly supportive
> living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, Subpart P, Appendix 1, § 12.04.

At the outset, the ALJ stated that, "no treating or examining medical source has stated the

claimant has an impairment or combination of impairments that meets or equals the criteria of

7

any listed impairment." (Tr. 16). This is incorrect. Ms. Collins' treating physician, Dr. Zaimes, indicated that Ms. Collins had "depressive syndrome" characterized by all nine of the listed symptoms, (Tr. 523), and that Ms. Collins has marked restriction of activities of daily living, "extreme"[1] difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace, only two of which are required under "paragraph B." (Tr. 530). Dr. Zaimes also indicated that Ms. Collins suffers from all of the "paragraph C" criteria. (Tr. 531). While Defendant points out that Dr. Zaimes did not check box four or five on the Psychiatric Review Technique form (Tr. 520), Dr. Zaimes stated, "It is my opinion that Ms. Collins is completely disabled. Standard for establishing this is the Disability Evaluation under Social Security." (Tr. 532). Clearly, failing to check the box was of no consequence, and was consistent with Dr. Zaimes' understanding of how to fill out the form.[2]

The ALJ gave three reasons for "not provid[ing] any controlling weight" to Dr. Zaimes' opinions: that Dr. Zaimes did not provide any clinical or objective findings to substantiate her opinions as the progress and treatment notes from Dr. Zaimes contain the claimant's subjective complaints; that the claimant's history of treatment is inconsistent with an individual experiencing totally debilitating symptomatology because the claimant has not required any psychiatric care at the emergency room or required any additional psychiatric hospitalizations after 2007; and that the claimant's activities of daily living are inconsistent with an individual who is unable to perform work at the light exertional level. (Tr. 21).

In discounting Dr. Zaimes' report of symptoms, the ALJ substituted her lay opinion for Dr. Zaimes' expert judgment. "A cardinal principle guiding disability eligibility determinations

---

[1] "Extreme" is more severe than "marked."

[2] At Tr. 523, Dr. Zaimes did not check the box for "depressive syndrome" although by checking the nine symptoms, and the submission of associated medical records, her conclusion is crystal clear.

8

is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotations omitted). Dr. Zaimes treated Ms. Collins from 2005 to 2010, at roughly monthly intervals. (Tr. 470-90, 535-39). "The principle that an ALJ should not substitute [her] lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Id.* at 319. Indeed, the field of mental health is largely based on the patient's subjective complaints. Discounting a psychiatric diagnosis for the sole reason that the analysis is based on subjective complaints would discount the entire field of psychiatry. *See Morris v. Barnhart*, 78 F. App'x. 820, 824 (3d Cir. 2003) (medical opinion properly discounted when underlying complaints were not credible).

The ALJ also erred in rejecting Ms. Collins' symptoms on the ground that Ms. Collins was not hospitalized since 2007. Hospitalization is not required by the listings or by rules related to assessment of credibility and mental health symptoms. SSR 96-7p; SSR 85-15. In requiring evidence of inpatient hospitalization, the ALJ applied an improper legal standard, and substituted her judgment for that of the Social Security regulations.

Lastly, the ALJ erred in finding that the claimant's activities of daily living were inconsistent with an individual who is unable to perform work at the light exertional level. The ALJ stated that, "the claimant testified she goes on family trips and vacations, went on a cruise with family members, and has also been to Florida and California since her alleged onset date." (Tr. 17). Ms. Collins' testimony was that she went to Florida and California in 1995 but has not been on any family trips in the past few years. (Tr. 69-70). In discussing Ms. Collins' activities of daily living, the ALJ failed to mention any of Ms. Collins' statements that were inconsistent

9

with the ALJ's determination. (Tr. 20). For instance, the ALJ did not mention that Ms. Collins

waits 2-3 hours after waking up to start moving around and that she has problems with

concentration. (Tr. 172-74, 177). The ALJ did not mention that it takes Ms. Collins 2-3 hours

longer to cook dinner than previously or that Ms. Collins is afraid to go out by herself. (Tr. 175).

> Dr. Zaimes found that Ms. Collins suffered from:

> Bipolar II depression combined with Obsessive Compulsive Disorder, and her
> medical condition render[s] the patient completely incapable of functioning
> independently or on an adult level. Pt. in past has gone on buy sprees. Currently
> housebound unless someone goes out with her. She makes endless lists, the ones
> today in her tote bag are multiple tablets with every page filled. Pt. has disabling
> panic & anxiety and then frank decompensation with auditory hallucinations (or
> at best very strange sensory experiences).

(Tr. 532). For the reasons above, the ALJ improperly disregarded Dr. Zaimes' medical opinions,

which were entirely consistent with her conclusion that, "Ms. Collins is completely disabled.

Standard for establishing this is the Disability Evaluation under Social Security." (Tr. 523).[3]

### B. The ALJ Erred in Assessing Plaintiff's Right Shoulder Impairment.

The ALJ stated that, "the treatment record reflected that the claimant has not generally

had treatment for her shoulder since about 2007." (Tr. 19). This statement is not supported by

substantial evidence, as the medical records indicate that Ms. Collins has received continuing

treatment through June 28, 2010. (Tr. 309-343, 543-658).[4] Defendant asserts that because

Plaintiff has not explained how this statement renders any of the ALJ's substantive findings

unreasonable, it cannot be a basis for remand. (D.I. 14 at 17). While Plaintiff has not been

explicit in this regard, the Court understands that the ALJ's factual determinations in assessing

---

[3] I recognize that the determination of disability is reserved to the Commissioner.
[4] Ms. Collins received treatment almost every month during that time period.

the right shoulder impairment necessarily are part of the RFC analysis, which is dealt with below.

### C. The ALJ Unreasonably Assessed Plaintiff's Residual Functional Capacity.

The ALJ relied on the mistaken belief that Ms. Collins did not have treatment for her shoulder since 2007 in making the RFC assessment. (TR. 19-22). Because the assessment was made based on an underlying factual error, the assessment is unreasonable. Ms. Collins manages her pain with Oxycontin and Oxycodone. (Tr. 310-33, 341, 543-658). However, Ms. Collins testified that she has pain even with medication and can only lift 5 pounds with her right arm. (Tr. 42, 65). The ALJ necessarily found this testimony not credible, but the ALJ might have reached a different conclusion had she not been mistaken about relevant facts such as the amount and frequency of treatment. Because the ALJ was not sufficiently aware of the underlying facts, her assessment was inconsistent with an RFC which includes light work requiring lifting 20 pounds occasionally with frequent lifting and carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

### IV.   CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is granted; the Commissioner's Motion for Summary Judgment is denied. The matter will be remanded for proceedings consistent with this opinion.